Good morning. May it please the court. Jessica Barclay Strobel for Petitioner Brian Pagayon. I will address Pagayon's exhaustion of his three issues before the BIA and why he was not removable under the modified categorical approach, which requires this court, therefore, to vacate the order of removal. My colleague, Victoria Schwartz, will address why Pagayon was not removable under the categorical approach, which applies. This is not moot court. If you want to cede some of your time to court counsel, you can do that, but we're not going to be limited to a single issue. Okay. I'd like to reserve one minute on rebuttal. You've already half a minute into your time. I would suggest you just get on with it. Okay. Neither of Pagayon's convictions rendered him removable under the modified categorical approach. This case turns on the question of what constitutes clear and removable offense, and this circuit has a bright-line rule. Charging documents and admissions by an alien before an IJ are not clear and convincing evidence. Don't we have to first deal with whether or not you properly exhausted the issue? I mean, we have this general, general exception that the IJ failed to take consideration of the totality of the evidence presented and failed to apply the correct legal standard to the facts and evidence. That seems to me like as general a challenge as you can possibly imagine. How do you get around that? I know that it wasn't your fault and that you're dealing with a pro se person here. Nonetheless, the law seems to be that, notwithstanding the status of the person we're talking about, that you have to satisfy exhaustion? Right. Well, first, Pagayon was a pro se Petitioner, which means he's entitled to a liberal standard for exhaustion. He was not required to use legal terms of art, such as modified categorical approach, or make specific statutory arguments. But do we throw away the rule because of the fact that we're dealing with a pro se? No, no, not at all. The other fact here that's important is that this Court has recognized that exhaustion is found when there is only one basis for the IJ's holding on a particular issue and the BIA reviews on the merits. But we have multiple bases here, do we not, for the determination? No, Your Honor. For example, the IJ's sole basis for holding Pagayon removable was charging documents. And so when the BIA reviewed on the merits, it must have been apparent to the BIA that the IJ was applying the modified categorical approach incorrectly because he was relying on documents he was not allowed to consider. This goes directly to Pagayon's statement that the IJ applied the incorrect legal standard. He didn't use something broad like saying there was not a correct – it wasn't an evidentiary objection or a factual objection. Pagayon identified the wrong legal standard. And the legal standard the IJ himself did not even identify in the decision. But also to understand whether Pagayon adequately exhausted his claims, it's important to understand his argument under the modified categorical approach. If Your Honor's will permit, I can introduce Bill. Well, I guess I want to follow up just one more question on my colleague's question. We only have the notice of appeal, and we look at what the notice of appeal says, and I read it pretty broadly as best I could. But he didn't – there was no brief filed. So it's still – given that there was no brief filed, I guess I'm trying to figure out, again, the best case I have that this has been exhausted. Certainly. I would say that Vizcala-Ayala – Me? Vizcala-Ayala – And why there? Because, once again, there was only one basis for the IJ's holding under the modified categorical approach, and the BIA reviewed on the merits, and there – Well, but we don't have just one basis here. We have some either firearm conviction or a drug conviction, or we got a withholding problem where there's a particular serious crime, and then we're going to look at future persecution. We've got parents of – appearance of bias. I mean, all of these – nothing can we find in this notice. Well, the – Pagayan raised three issues. So what you identified there are the three issues that he raised. One was that the IJ applied the incorrect legal standard in holding him removable, and that was because the IJ applied the modified categorical approach incorrectly. The other was that the IJ failed to apply the totality of the circumstances in denying him relief from removal, and that goes to the particular serious crime and substantial evidence holdings by the IJ. And then finally, Pagayan was very explicit that he felt there was a due process violation, and that's why he used the terms full and fair hearing and due process violation in his BIA notice of appeal. So to return to the modified categorical approach, I think precisely because Pagayan's argument under the modified categorical approach is so strong, that's why the government focuses much of its brief on exhaustion. But on the merits, as I said, this Court has a very clear bright-line rule, which is that the charging documents the IJ relied on, he could not, in fact, rely on. And Pagayan's statements before the IJ were also not clear and convincing evidence of his removability. Well, why do you say we're not – so go ahead, sorry. That was going to be my question. Why not? Well, because this Court – are you asking regarding the admissions? Yes. Okay. Because this Court has repeatedly held that admissions before the IJ are not a basis – not a reliable basis for – That isn't what we have here. We have some documents. We have two informations. We have a court document otherwise at the end, which suggests the conviction. If we apply the two together, it seems to me one can come out that this is a modified categorical, but we don't – we've got extra. We've got admissions. So first of all, I would say that in Tocatli and as recently in Essiong, admissions are simply not a reliable basis for understanding – Admissions standing alone are not a reliable basis. And that's understandable. I mean, you ask somebody and you say, well, did you get convicted of something? And they say yes, yes, yes. But in – well, we've never had a case where we've had documents that perhaps in themselves are not enough coupled with an admission. I mean, a situation like this where the district judge – the IJ, rather, goes through point by point, through his record, looking at a – looking at a rap sheet and comes up with specific crimes, and then he says, yes, that's what they are. And specifically, he mentions methamphetamine, the – you know, he then talks about the gun case. You know, it's all there. Well, it's true that Pagayan was – Why putting the documents together with admissions? Why isn't that enough? Why shouldn't we hold that that's enough? Well, first of all, because this Court has held in very similar facts that documents coupled with admissions are not enough. For example, in another case where there were also documents and the alien admitted that he had possessed meth, the same allegations as in his charging documents, those admissions were not a reliable basis and were not allowed to be coupled with the charging documents. You have the case of S. Young, which talks about the prior decision in Barragan-Lopez, which I think you rely upon for the proposition that admissions alone are not sufficient, which I think we all agree with. But as I read S. Young, the Court took pains to say that in Barragan-Lopez we had something in addition to admissions there. That wasn't apparent when you read Barragan-Lopez. But when you read S. Young, it seems that we filled in the blanks there, so we're talking about admissions plus. And S. Young, the Court wasn't satisfied that the plus factor was established based upon the reference to documents that were not in the record. But it seems to me that here we have the plus factor that really locks this in. How do you distinguish this case from Barragan and S. Young in terms of what the Court has been speaking about in those two cases? I would note that, as I said before, in Villa Real-Rodriguez, for example, this Court recognized that there was a conviction for 11377, the same charge that Padilla was charged with, and the alien admitted that that charge was for possession of meth. And yet this Court held that that was not enough for the I.J. to have held that alien removable. So this is an issue that has been addressed. And the reason that they're not reliable is that an alien's pro se admissions, a non-native speaker appearing before the I.J., who very well will probably say yes to anything asked, is not reliable proof of what a jury actually found when they convicted him or what facts he actually pled to. And before we separate a man such as here who's lived in this country for over a decade and his children and a mother here, before we separate him, we require clear and convincing evidence. And I have exhausted my time. What a poise to compliment you. The excellent brief that you wrote, it was a pleasure to read it. And you do terrific work. And I just thought I felt compelled to tell you that. Well, thank you very much, Your Honor. We'll hear from the government. Good morning, Your Honors. And may it please the Court, Michael Heiss on behalf of the Respondent, the Attorney Exhaustion is required by statute. Congress put it in there so that these proceedings would be orderly, so that arguments would be made and the agency would have the opportunity to address them. This Court They exhausted the due process argument issue, right? That's There's a due process claim here as well. There is a very broad due process claim that was raised, as Your Honor noted. That part was exhausted. Do you agree with that? It still needs to be more specific than that. I mean, due process is a very amorphous thing. The pro se person, they raised the matter of due process. It seems that that aspect of this has been exhausted, but you would get a different view of it. I don't know. Well, it's important to look at what due process claims were raised. These are very specific things. There were claims of exclusion of evidence. There were claims of alleged immigration judge bias that only appeared in the brief here. And while those might be viable claims, the board still needs the opportunity to address them in the first instance. We have to look at what his appeal notice said. So you don't cut the pro se person any break at all here, do you? Oh, absolutely. Pro se aliens are absolutely entitled to a liberal standard, but a liberal standard is not a limitless standard. There has to be something for the board to actually figure out what an alien is trying to say. How do we draw the line here? It has to be a case-by-case basis. You have to look at what the appeal notice says. And as Your Honor has pointed out, it was incredibly broad. It stated that the immigration judge failed to consider the totality of the circumstances and applied an incorrect legal standard. How do we know as to what? There were several different claims, as Your Honor has noted. He was charged with being an aggravated felon or, excuse me, an alien convicted of an aggravated felony. There was the controlled substance violation. There was the withholding of removal issues, convention against torture, particularly serious crime, and actually a nascent citizenship claim. He actually at one point sought cancellation or removal. So we have a lot going on here. So for the board to somehow glean from those broad statements, as well as the due process claim, what he was arguing is simply not possible. And that could be accomplished on a case-by-case basis in terms of what is the alien complaining about. The board has to have some sense. And as this Court says, has said in, I believe it was Figueroa, a general challenge to immigration judge's decision will not satisfy exhaustion. And this Court has previously said that claims of immigration judge bias that are a due process violation must be exhausted, despite it being a due process claim and a very important one at that. But there still needs to be something for the board to address. And what we have here is able counsel after the fact, which, you know, perhaps Mr. Berguin could have used while he was before the immigration judge and the board, but they cannot add language that simply does not appear in the appeal notice to generate issues that were never exhausted before the agency. To get on to the, if we get past exhaustion, if we get past exhaustion, you admit that the abstract of judgment is not enough by itself to satisfy the, under the modified categorical approach, right? That's correct. You don't have any claim that the categorical approach was adequate, right? No. Okay. So where are you? Well, actually, as to the, I'm sorry, Your Honor, to cut you off, as to the gun possession charge, that is an open question whether that could be reviewed under the categorical approach. We believe it's, I'm sorry. But not as to the mass charge. Yes, correct. This Court has consistently held that the California statute at issue penalizes possession of more drugs than the Federal analog statute. And just looking at the abstract of judgment doesn't resolve either question. Assuming that we don't, on the firearms charge, we don't agree with you on the categorical approach, and on the mass charge, it itself does not resolve it, right? That's correct. But as Your Honor has noted earlier, we have more than that here. Have you heard, yes is enough? Yes. That answers my question. Yes. Sorry, Your Honor. Okay. And then if you add the charging document, that's still not enough. The charging documents are much clearer. You can consider them. I'm just adding one layer of complexity now. Certainly. You've said that the abstract is not enough, okay? And I'm trying to see whether you agree that the abstract plus the charging document is not enough. That's a closer call in this case. I can't give you a yes or no. But if pushed, you'd have to admit it's not good enough, right? Because it doesn't say it's charged in the, what is it, indictment information, whatever. That's correct, Your Honor. And the reason that's important is because, as you know, people often plead down. Yes. I mean, they get charged up and they plead down. In fact, that's the main reason people plead, defendants plead, is because they get a break. Well, the difference here, however, Your Honor, is that the charging document actually matches the abstract of judgment in terms of what statutes were charged and then what the statutes of conviction were. So those two together, in this case, should work. Typically what happens, and actually I'm trying to remember the name of the case where I believe the alien was charged. This was in his state court proceedings. He was charged under one California statute. And then his, another document suggested a different statute, and he was ultimately convicted under a third statute. So that generates confusion. What we have here is a straight match, and actually he was asked before the immigration judge, is this conviction, it's the whole A1, B1, B2 discussion that all matches. So let me try to understand the chain of reasoning. The statute, the abstract itself is not enough because it includes, it charges a statute that's too broad, right? If, yes. In this case, yes. In this case? Yes. Okay. For the controlled substance charge, yes. Just for the controlled substance charge. I submit that, again. I understand, and you have some doubt as to that. Let's just focus on the controlled substance because it's clear there. Yes. And then he also gets charged with the same statute in the, what's it, indictment, information? Information, yes. Information. And that one says methamphetamine. Yes. And what we could infer is that because he got charged with the same statute and the charging documents had methamphetamine, there was no charging down because the only thing that could have been was methamphetamine. Right. There is no doubt here. And that's what the court looks to, especially after Nishawan, is whether the conviction documents are reliable and judicially noticeable and things like that. And these are definitely documents the court can consider and look to whether it makes sense as to what happened here. What did the I.J. rely on in terms of. And then you have another argument about admissions. Yes. Those are an added layer. As Your Honors were discussing earlier, certainly under S. Young, an admission standing alone in the face of an inconclusive conviction record will not be enough. But certainly admissions can be considered under Berrigan, who's Berrigan Lopez, on top of or in addition to. We're not trying to consider them exclusively. Was he counseled at the time of the admission? Before the immigration judge? Yes. No. He had several opportunities to obtain counsel and consistently appeared without counsel. So no, he was pro se before the board. Or excuse me, before the I.J. This is a long no. Just trying to be clear. I don't let it up no's anyway at the yes's. The answer is no. No. He did not have counsel. OK. No. I'll get the point, Your Honor. So when the I.J. is sitting there saying a bunch of legal stuff, I assume he is, was this in English or was this translated? Yes. Mr. Pagan speaks English. There was no translator. OK. So the I.J. reads him these things and he says yes. It's actually. He doesn't really have anything in front of him to do that. He's working for memory. Yes. The judge goes through the record with him. He would have said yes if he had said, you know, are you guilty of overdue library books? Did you get convicted of felony of that? He probably said yes too, right? That's certainly possible, Your Honor. He didn't have a lawyer with him to make sure, to advise him as to whether what the judge read was really consistent with his record. But he had the opportunity to object. An alien is entitled to represent himself just like anyone else is entitled to represent themselves in court. And the judge very carefully went through. But we're looking for liability. We're looking for some, you know, as to whether the colloquy really is sort of a meaningful additional measure of reliability. So when he says yes, that's what I was convicted of, we can think he means that. I'm not entirely convinced that when somebody reads out what was the, what was the, on August 22nd, 2005, convicted in the Superior Court of California in possession of controlled substance, methamphetamine, felony in violation of Section 1137. I mean, that's a lot of stuff, right? And he says yes. That's his life. That's a pretty big deal to be convicted of something that I'm fortunate enough to never have been. But I think I would remember that. That's a pretty substantial change in someone's life. He was sentenced to extensive prison terms for his convictions. But I'm just wondering whether he would remember specifically whether it was methamphetamine or something else. The, in addition, however, I mean, the point here is that we have more than just the admission. If it was just, that would be the case in S. Young, if maybe it's questionable memory and we didn't have anything else to corroborate it. The IJ simply told him that they've given to you, as well as to the judge, a copy of the abstract and the underlying information. So he had it physically in front of him for that guy. It wasn't just something that was read to him. As I understood it, document 276 from the record, supplement B, form I-589. Did he submit that? That's his asylum application? That is the part, it's the supplement B, where there's a list of arrests, charges, and convictions. If I may? You may. Thank you. I'm over my time. I apologize. I understood he submitted that part of the application. Yes. Yes, he did. Which lists all of these arrests, charges, and convictions. Yes. And that was submitted by him, correct? Correct, Your Honor. Yes. So it wasn't as if he went to this totally unknowledgeable. He had already submitted a list. That is exactly right, Your Honor. Yes. Absolutely true. And if I don't find the methamphetamine conviction is quite enough, can I do it only under the firearm conviction? Certainly. Actually, that's the more significant conviction. The controlled substance conviction will not render him ineligible for relief. It's definitely something that an immigration judge will consider, whether to grant discretionary relief, given his other serious convictions. But the aggravated felony conviction by alone certainly would render him ineligible. And the sticking point is there is the ancient firearms. Allegedly. The record belies the fact that this was an antique weapon. And every court to have considered it has concluded that. I've never seen an antique weapon, obviously. But they keep cropping up. It's an interesting claim. It's definitely a difference between the California statute and the federal statute. The federal statute plainly says not an antique weapon. But that has – every court to look at it has said that that is an affirmative defense. And the Board actually and Bonk considered that very question and said, yes, this is something that the alien needs to raise. Okay. Thank you. Thank you, Your Honors. Your Honor, if I may, I'll give you a minute for rebuttal, if you wish. Thank you. Thank you. Really briefly, Your Honors, as to the antique gun argument, as counsel noted, it's an open question in this circuit. And we believe that under the plain language of the statute, which is titled Definitions, there is no basis that that definitional language creates an affirmative defense. Second, as Your Honors noted, the I.J.'s decision here was generally vague. And where a pro se litigant has such a general I.J. opinion, we believe it is excusable and he has exhausted with the language he has here. Finally, we want to note that the government would have you create a brand new rule, which we do not believe – When you say vague, what do you mean? The I.J.'s decision doesn't say categorical approach, modified categorical approach. It doesn't use any of those terms of art. So when the I.J.'s decision doesn't – we believe it is excusable that the petitioner doesn't then come in and challenge it on using terms that the I.J. himself didn't use. The I.J. simply finds them removable with no other explanation. I think the government's objection is that he didn't say anything having to do with the – specific to the prior conviction, to the priors. And what exactly did he say in his notice of appeal? He challenged the conclusion as a matter of law. So as my co-counsel pointed out, he didn't – It doesn't say anything about that his challenge even focuses on the prior crimes, prior convictions. Correct. But whereas here that was the only basis for the judge's decision, it couldn't have been for anything else. It would have been clear to the BIA that that's what he was challenging because there was no other – I mean, the I.J. found him removable. I thought you had some legal challenges to the removability determination. Exactly. That's what we're discussing, the removability determination under either the categorical or the modified. The substantive removability determination. You disagree with the judge's substantive ruling as well, right? Absolutely, under the categorical and the modified categorical approach. And then we disagree on the withholding of removal, if that's what you're referring to, Your Honor. We believe that the I.J. On the withholding, okay. The I.J. applied the incorrect standard as determined by the BIA on withholding of removal as well, Your Honor. And where do you differentiate those two in the notice of appeal, those two challenges? We believe that the first issue, he challenges the ground of his appeal, the underlying basis. Withholding is an alternative relief, Your Honor. It's not sort of the underlying basis. He challenged the underlying removability, which again, the I.J. didn't specify modified, not modified. And then withholding removal would be an alternative relief that he is seeking here and that he was seeking below. But it's not sort of – it's clear that he was challenging the underlying basis, which would be only the removability determination. That was the sole basis. But what does he say in the notice of appeal that identifies the judge's ruling on the withholding? You're right that he does not sort of specify it as clearly as we might have liked, Your Honor. But, you know, he does say that the I.J. failed to take into consideration of the totality of the evidence presented and that totality of the evidence is directly linked to the withholding of removal standard, as we know, even if, you know, he didn't use that specific term. That's an argument you don't really know either. There's no way for us to know, of course. But on this record where you have a pro se petitioner, we need to give the pro se petitioner the benefit of the doubt when we don't know. I mean, the totality of the evidence and applying the right legal standard is not anywhere in the opinion at all. Therefore, I found it somewhat uneasy that you continue to say if the I.J. had applied a specific standard, he would have said it. I didn't think he copied the opinion in any way. He just set out a general standard because he didn't know any better and nobody else knows either. But exactly as here, where the I.J. doesn't make it more specific, how could he know better? How could he know there's something like a modified categorical approach when even the I.J. doesn't say, applying the modified categorical approach, this is what I'm doing? So it's seems challenging to me to apply the pro se to a higher standard than we do the immigration judge and the specificity of his decisions. Okay. Thank you.  Okay. This is how you stand submitted.
judges: Block, Kozinski, Smith N. R.